NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2014-0480

JOHN FARRELLY

v.

CITY OF CONCORD & a.

Argued: June 4, 2015
Opinion Issued: December 23, 2015

Backus, Meyer & Branch, LLP, of Manchester (Jon Meyer on the brief and orally), for the plaintiff.

Gallagher, Callahan & Gartrell, P.C., of Concord (Samantha D. Elliott on the brief and orally), for the defendants.

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette on the brief), and Nixon, Vogelman, Barry, Slawsky & Simoneau, P.A., of Manchester (Lawrence A. Vogelman on the brief), for American Civil Liberties Union of New Hampshire and Gay & Lesbian Advocates & Defenders, as amicus curiae.

LYNN, J.  The plaintiff, John Farrelly, appeals an order of the Superior Court (Smukler, J.) granting summary judgment in favor of the defendants, Concord police officers Walter Carroll and Eric Pichler and the City of Concord (city), on the basis that the defendants are entitled to official and vicarious immunity.  This case presents the question of whether our decision in Everitt v. Gen. Elec. Co., 156 N.H. 202 (2007) applies to intentional torts.  We conclude that it does and that the language set forth in Huckins v. McSweeney, 166 N.H. 176 (2014) must be interpreted consistently with the standard articulated in Everitt.  Although we find this to be a close case, we ultimately conclude that the trial court did not err by granting summary judgment to the defendants, and accordingly, we affirm.

I

The record before the trial court for summary judgment purposes supports the following facts.  After living with the plaintiff for approximately three years, the plaintiff's girlfriend and her daughter moved out in November 2008.  On February 16, 2009, the plaintiff sent his ex-girlfriend an e-mail titled "WHY ARE YOU SO MEAN TO [DAUGHTER]?"  The ex-girlfriend responded the next day and told the plaintiff to stop contacting her or she would go to the police.  The plaintiff sent three e-mails on February 18.  The first, sent at 6:06 p.m., said "HAPPY 30TH BIRTHDAY A DAY EARLY.  I hope you like your new piercings, just wait until [daughter] sees them.  What were you thinking of???  You are a Mother for God's sakes."  The second e-mail, which the plaintiff sent at 7:29 p.m., said, "SO I HEAR EVERYONE AT THE HOSPITAL SAW YOUR NEW NIPPLES PIERCINGS.  WHY HAVE YOU TURNED INTO SUCH A TRAMP? [ ]  WHAT IS [DAUGHTER] GOING TO THINK OF THEM?"  The third e-mail, sent at 8:36 p.m., again referenced the piercings and also referred to the fact that the plaintiff was contemplating filing a civil suit against the ex-girlfriend.  The e-mail ended with, "HAVE A[N] AWFUL LIFE AND HOPEFULLY [DAUGHTER] DOESN'T GROW UP TO BE LIKE YOU."  On February 21, the plaintiff sent a lengthy e-mail titled "HAPPY 30TH YOU LYING CHEATING HERPES CARRYING JEZEBEL."  In the e-mail, the plaintiff called his ex-girlfriend a "little slut" and described, in crude detail, sexual acts between the ex-girlfriend and other men.  In this e-mail, the plaintiff also said that he would come to the ex-girlfriend's birthday party and tell everyone that she gave him herpes and stole $100,000 from him.

After receiving the last e-mail, the ex-girlfriend went to the Concord police station.  She first spoke with Lieutenant Carroll, who assigned the case to Officer Pichler.  Pichler interviewed the ex-girlfriend, who gave him the e-mails and told him that "she had been receiving repeated communications from her ex and that they were beginning to concern her and scare her and she was worried for her safety and the safety of her daughter."  Pichler came to the conclusion that if the facts she stated were true, there was evidence of a crime

2

being committed.  To obtain more information, Pichler and another officer went to the plaintiff's residence to speak with him.  The plaintiff admitted that he sent the e-mails despite having been told by his ex-girlfriend and her father not to do so.  He told the officers that he did not mean what he said and that he would not go to his ex-girlfriend's birthday party, but he also stated that he would continue to contact her.

Pichler and Carroll agreed that the plaintiff had committed the crime of harassment.  Pichler believed that there was probable cause to arrest him, pursuant to RSA chapters 173-B and 594.  See RSA 173-B:10, II (2014); RSA 594:10 (Supp. 2014).  Because the officers also believed that the crime had occurred or continued to a period within the past 12 hours, [1] they arrested the plaintiff without a warrant.  See RSA 594:10, I(b).  At the time, Pichler was unaware that he could arrest without a warrant only if the plaintiff's conduct constituted a credible present threat to his ex-girlfriend's safety.  See RSA 594:10; RSA 173-B:1, I (Supp. 2014).  During his deposition, Pichler stated that the plaintiff was "probably not" a present threat to his ex-girlfriend's safety at the time of the arrest.  However, based on the e-mails and the ex-girlfriend's statements, which were corroborated by the plaintiff, Pichler thought that an arrest was mandatory.

Carroll and Pichler drafted the criminal complaint against the plaintiff. They consulted the New Hampshire Criminal Code Annotated 2008-2009 edition and discussed RSA 644:4, I(b) and RSA 644:4, I(f).  See RSA 644:4 (Supp. 2014).  It is unclear when they discussed the statute — before or after arresting the plaintiff — but the timing of their discussion is not dispositive. They decided to charge the plaintiff under subparagraph (f) because Carroll believed it more closely reflected the facts of the case.  In the book that the officers used, the case annotations to the statute indicated that subparagraph (f) had been declared unconstitutional years earlier.  See State v. Pierce, 152 N.H. 790 (2005).  Neither officer noticed the annotations.  Weeks later, the county prosecutor informed Pichler that RSA 644:4, I(f) was unconstitutional, and, ultimately, the charges against the plaintiff were dropped.

During his deposition, the plaintiff testified that after he was arrested Pichler said to him: "This is what you get for f*****g with a 30-year veteran of the Concord, PD."  The ex-girlfriend's father and uncle are retired Concord police officers.  Carroll had worked with the ex-girlfriend's father and had known her since she was a child.

---

[1] Cf. RSA 625:8, IV (2007) (providing that "in the case of an offense comprised of a continuous course of conduct," the limitations period begins to run "on the day after that conduct or the defendant's complicity therein terminates").

3

## II

The plaintiff brought claims against the defendants, the City of Concord (city), Officer Pichler, and Lieutenant Carroll, for: (1) malicious prosecution (count I); (2) false imprisonment (count II); (3) violation of his rights of free speech and against unreasonable searches and seizures under the New Hampshire Constitution (count III); and (4) negligence (count IV).[2]  The defendants moved for summary judgment, arguing that: (1) the city was entitled to immunity under RSA 507-B:5 (2010); (2) the defendants were entitled to official and vicarious immunity on counts I, II, and III; (3) RSA 594:13 (2001) barred the claims because there was probable cause to arrest the plaintiff under RSA 644:4, I(b); and (4) a warrant was not required under RSA 594:10 because there was probable cause to arrest the plaintiff under RSA 173-B:1.  While the court's ruling was pending, we decided Huckins v. McSweeney, 166 N.H. 176 (2014), which prompted the plaintiff to file a memorandum of supplemental authority before the trial court rendered its decision.

The court rejected the defendants' arguments based upon RSA 594:13 and RSA 594:10, and found that the warrantless arrest was unlawful.  However, the court ruled that the defendants were immune from suit.  The court granted summary judgment to the city on count IV (negligence) because it concluded that the exception to municipal immunity found in RSA 507-B:2 (2010) does not apply, as the claim asserted therein has no nexus to cars or premises.  See Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 696-97 (2013).

The plaintiff argued that RSA 507-B:2 and :5 could only "provide immunity to municipalities for any intentional tort committed by a municipal employee under the same terms and conditions as RSA 541-B:19 provides sovereign immunity to the State for any intentional tort committed by a State employee." Huckins, 166 N.H. at 182.  The trial court ruled that it did not need to decide the issue of statutory immunity under RSA 541-B:19 (2007) (and, derivatively, that statute's required parity with RSA 507-B:2 and :5) because the individual defendants had official immunity and the city had vicarious immunity.  In so ruling, the trial court presumably held the view that official immunity under the common law is distinct from, and operates

---

[2] Although not entirely clear, count IV of the complaint appears to name only the city (and not Carroll and Pichler) as a defendant.  The essence of the negligence alleged in this count is that the city's failure to timely and properly inform and train the individual defendants caused them to illegally arrest the plaintiff.  In its summary judgment order, the trial court treated count IV as if it applied only to the city; although the order disposed of the entire case, it granted judgment only in favor of the city on count IV and never suggested that there was any aspect of that count that remained viable after its order.  Because the plaintiff has not appealed the court's ruling as to count IV, we need not resolve the matter.

4

independently of, statutory immunity provided by RSA chapter 507-B, and is not subject to the same "terms and conditions" that we articulated in Huckins.

Under the common law doctrine of official immunity, "municipal police officers are immune from personal liability for decisions, acts or omissions that are: (1) made within the scope of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Everitt v. Gen. Elec. Co., 156 N.H. 202, 219 (2007). The trial court found there was "no question" the officers' acts were within the scope of their official duties and completed while in the course of their employment, and that the acts were discretionary. The court ruled that while the officers' actions "may be deemed negligent," they were "not wanton or reckless." Viewed in the light most favorable to the plaintiff, the court found that the only evidence of recklessness was Officer Pichler's comment to the plaintiff after he was arrested. However, the court found that the comment was made "in the context of Pichler's belief that he had the lawful authority to arrest [the plaintiff] without a warrant." The court further found that "Pichler's hindsight concession that he did not have probable cause to arrest [the plaintiff] does not create a factual issue given the undisputed testimony that he made the statement while under the impression that he had lawful arrest authority" and, therefore, the statement did not evidence wanton or reckless conduct. The court concluded that the defendant officers had official immunity and the city had vicarious immunity for counts I, II, and III. This appeal followed.

III

The plaintiff appeals only the grant of summary judgment dismissing his claims for malicious prosecution (count I) and false imprisonment (count II). He argues that the trial court erred by ruling that the officers are immune because the record contains evidence that they acted in bad faith retaliation. He contends that the court should have applied both a subjective and an objective standard and not relied only upon the officers' subjective belief when deciding to grant immunity for these intentional tort claims. The plaintiff also argues that it was error to grant summary judgment to the defendants because there exists a genuine issue of material fact as to whether the defendants acted wantonly or recklessly. Because, in his view, immunity should not have been granted to the individual defendants, the plaintiff also argues that the court should not have granted derivative vicarious immunity to the city.

The defendants counter that there are no disputed facts that bear upon recklessness and that the court correctly analyzed and granted summary judgment to the city and the officers. They argue that there was no need for the trial court to insert an objective analysis into its decision-making, as the plaintiff contends, and assert that in any event the plaintiff failed to preserve

5

this issue for appellate review.  They further contend that the officers did act in an objectively reasonable manner.[3]

A

We first address the defendants' preservation argument.  They contend that the plaintiff "never argued to the trial court that official immunity is available only if the officers' belief . . . was objectively reasonable," and further argue that the issue was not included in his notice of appeal.  However, in his memorandum of supplemental authority submitted to the trial court, the plaintiff did argue that the "requirement of reasonable belief of lawfulness" set forth in Huckins "contains both a subjective and objective element."  See Huckins, 166 N.H. at 182.  Although his argument appears to be directed to RSA 507-B:5 and not to common law official immunity, the defendants should have understood that the plaintiff was arguing that objective reasonableness was required for any immunity to apply.  Thus, we find that the plaintiff's argument on appeal is adequately preserved by his argument to the trial court.  In his notice of appeal, the plaintiff lists, among other questions, "[w]hether the trial court erred in extending official immunity to police officers who utilized their authority to make arrests, and file charges, for personal, non-law enforcement purposes," and "[w]hether the privilege of official immunity is applicable when defendants acted with malice in initiating plaintiff's prosecution."  The issue of the officers' beliefs and actions and their objective reasonableness could "have been anticipated from a reading of the questions stated in the notice of appeal."  In re "K", 132 N.H. 4, 17 (1989); see Sup. Ct. R. 16(3)(b).

B

A central issue in this case is the plaintiff's contention that our decision in Everitt, 156 N.H. 202, which the trial court followed, conflicts with our more recent decision in Huckins, 166 N.H. 176.  In Everitt, we noted that "[v]arious concepts of immunity exist under both common law and statutory law to protect governmental entities and public officials from liability for injury allegedly caused by official conduct."  Everitt, 156 N.H. at 209.  Immunity doctrines are "designed to protect particular government entities and . . . rooted in the common law at their inception."  Id.  The doctrine of official immunity protects public officials and employees from personal liability for alleged common law torts committed within the scope of their government employment.  Id.  Recognizing that the legislature had adopted statutory immunity for all state officers and employees, see RSA 99-D:1 (2013), but only

---

[3] As an alternative to their official and vicarious immunity arguments, the defendants also claim entitlement to the defense of absolute prosecutorial immunity.  Because we hold that the defendants have official and vicarious immunity, we need not address their prosecutorial immunity argument.

isolated immunity provisions for certain municipal officials, we stated, "other than those instances in which the legislature has spoken, the scope of official immunity for municipal employees sued in their individual capacities remains a common law question." Everitt, 156 N.H. at 210.

"Whether, and to what extent, official immunity should be granted to a particular public official is largely a policy question, and depends upon the nature of the claim against the official and the particular government activity that is alleged to have given rise to the claim." Id. at 216 (citations omitted). As in this case, the defendants in Everitt were municipal police officers, and we discussed at length the role of such officials and the importance of their immunity from suit:

> Police officers are regularly called upon to utilize judgment and discretion in the performance of their duties. They must make decisions and take actions which have serious consequences and repercussions to the individuals immediately involved, to the public at large and to themselves. . . . Further, law enforcement by its nature is susceptible to provoking the hostilities and hindsight second-guessing by those directly interacting with police as well as by the citizenry at large. Police officers, as frontline agents for the executive branch, are particularly vulnerable to lawsuits, whether the underlying police conduct or decision was errant or not. Unbridled exposure to personal liability and hindsight review of their decisions would undoubtedly compromise effective law enforcement and unfairly expose officers to personal liability for performing inherently governmental tasks. The public safety entrusted to police officers demands that they remain diligent in their duties and independent in their judgments, without fear of personal liability when someone is injured and claims an officer's decision or conduct was to blame. The public simply cannot afford for those individuals charged with securing and preserving community safety to have their judgment shaded out of fear of subsequent lawsuits or to have their energies otherwise deflected by litigation, at times a lengthy and cumbersome process.

Id. at 217-18.

We then "adopt[ed] parameters for official immunity, as informed by our case law, the law in foreign jurisdictions as well as the scope of official immunity identified by the legislature in RSA 99-D:1." Id. at 219. We held that "municipal police officers are immune from personal liability for decisions, acts or omissions that are: (1) made within the scope of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Id. We "caution[ed] against a formulaic approach to discerning discretionary and ministerial decisions, acts

7

or omissions. In the context of immunity, these terms are not subject to a dictionary definition, nor can they be reduced to a set of specific rules." Id. We also reiterated that "the purpose of immunity is to operate as a bar to a lawsuit, rather than as a mere defense against liability, and is effectively lost if a case is erroneously permitted to go to trial." Id. at 221 (quotation omitted).

In Everitt, we also extended this official immunity to municipalities, stating that "[o]fficial immunity, when available to individual public officials, generally may be vicariously extended to the government entity employing the individual, but it is not an automatic grant." Id. (quotation omitted). "Vicarious immunity ought to apply when the very policies underlying the grant of official immunity to an individual public official would otherwise be effectively undermined." Id.

Although we observed in Everitt that "official immunity for municipal employees sued in their individual capacities remains a common law question," id. at 210, we also recognize that the legislature has enacted some statutes addressing municipal and sovereign immunity. First, RSA 99-D:1 grants immunity to individual state officials and employees. It provides:

> It is the intent of this chapter to protect state officers, trustees, officials, employees, and members of the general court who are subject to claims and civil actions arising from acts committed within the scope of their official duty while in the course of their employment for the state and not in a wanton or reckless manner. It is not intended to create a new remedy for injured persons or to waive the state's sovereign immunity which is extended by law to state officers, trustees, officials, and employees. The doctrine of sovereign immunity of the state, and by the extension of that doctrine, the official immunity of officers, trustees, officials, or employees of the state or any agency thereof acting within the scope of official duty and not in a wanton or reckless manner, except as otherwise expressly provided by statute, is hereby adopted as the law of the state. The immunity of the state's officers, trustees, officials, and employees as set forth herein shall be applicable to all claims and civil actions, which claims or actions arise against such officers, trustees, officials, and employees in their personal capacity or official capacity, or both such capacities, from acts or omissions within the scope of their official duty while in the course of their employment for the state and not in a wanton or reckless manner.

RSA 99-D:1. RSA 99–D:1 represents "a statement of policy adopting the common law doctrines of sovereign and official immunity." Laramie v. Stone, 160 N.H. 419, 437 (2010). While there is no corresponding comprehensive statute covering municipal employees, the legislature has afforded immunity to

certain specific categories of municipal officials. See, e.g., RSA 31:104 (Supp. 2014) (providing that certain municipal officials, including city councilors, selectmen, school board members, mayors, city managers, and county commissioners, cannot be held liable for certain acts or decisions made "in good faith and within the scope of [their] authority").

As to the amenability to suit of the State itself, the legislature has waived its sovereign immunity, see generally RSA chapter 541-B (2007 & Supp. 2014), but has carved out a number of exceptions:

> I. Without otherwise limiting or defining the sovereign immunity of the state and its agencies, the provisions of this chapter shall not apply to:
>
> (a) Any claim which is based upon the exercise of a legislative or judicial function.
>
> (b) Any claim based upon an act or omission of a state officer, employee, or official when such officer, employee, or official is exercising due care in the execution of any statute or any rule of a state agency.
>
> (c) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary executive or planning function or duty on the part of the state or any state agency or a state officer, employee, or official acting within the scope of his office or employment.
>
> (d) Any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations, or interference with contractual relations, provided that the employee whose conduct gives rise to the claim reasonably believes, at the time of the acts or omissions complained of, that his conduct was lawful, and provided further that the acts complained of were within the scope of official duties of the employee for the state.

RSA 541–B:19.

Through RSA chapter 507-B, the legislature also has granted some measure of immunity to municipalities, although, as our decisions indicate, we have not interpreted this statute as completely occupying the field of municipal

9

immunity so as to preempt the common law doctrine.[4] RSA 507-B:5 states: "No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." RSA 507-B:2 sets forth an exception to this immunity, under which "[a] governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises . . . ." RSA 507-B:4, IV (2010) also provides that, for claims or actions against municipal employees or officials, "the liability of said employee or official shall be governed by the same principles and provisions of law and shall be subject to the same limits as those which govern municipal liability, so long as said employee or official was acting within the scope of his office and in good faith."

In Huckins, the plaintiff argued "that RSA 507-B:2 and RSA 507-B:5 violate[d] his constitutional right to equal protection because they result in different treatment of plaintiffs injured by municipal employees and those injured by State employees." Huckins, 166 N.H. at 181. We concluded however, that there was no difference between the treatment of a plaintiff injured by an intentional tort of a state employee and a plaintiff injured by an intentional tort of a municipal employee. Id.

"Our prior cases establish that neither Part I, Article 14 nor the equal protection guarantee is violated when the State immunizes itself and its municipalities from liability for intentional torts by governmental employees acting under a reasonable belief that the offending conduct was authorized by law." Id.; see Opinion of the Justices, 126 N.H. 554, 564-65 (1985); City of Dover v. Imperial Cas. & Indemn. Co., 133 N.H. 109, 115 (1990). "On the other hand, under our prior cases, it is unconstitutional for the State to immunize itself or its municipalities from liability for intentional torts committed by government employees when those torts are not grounded on a reasonable belief in the lawfulness of the disputed act." Huckins, 166 N.H. at 182.

"In light of our obligation to construe RSA 507-B:2 and RSA 507-B:5 so that they comply with the State Constitution," we determined that the statutes "provide immunity to municipalities for any intentional tort committed by a municipal employee under the same terms and conditions as RSA 541-B:19 provides sovereign immunity to the State for any intentional tort committed by a State employee." Id. (citation omitted). That is, to have immunity, the official must have acted within the scope of his official duties and have "reasonably

---

[4] Importantly, we have never suggested that the legislature may not completely preempt the field of the immunity of the state or its political subdivisions or their officers or employees for claims arising under state law, and nothing in this opinion is intended to express any view on that matter.

10

believe[d], at the time of the acts or omissions complained of, that his conduct was lawful."  RSA 541-B:19, I(d).

Although the trial court in the instant case was correct to point out that the doctrine of official immunity arises from the common law, rather than from a statute, we agree with the plaintiff that official immunity must be subject to the same constitutional requirements as those we articulated in Huckins with respect to RSA chapter 507-B and RSA 541-B:19.  In other words, the defendants are entitled to official immunity only if they reasonably believed that their actions were lawful.

The plaintiff argues that the "reasonable belief" standard encompasses both a subjective and an objective standard.  He contends that the trial court erred by analyzing only the officers' subjective belief in the lawfulness of their actions.  The plaintiff argues that, in order to determine whether the officers "reasonably believed" that they acted lawfully, the court should have examined both whether the officers actually held that belief and whether such a belief was objectively reasonable.

We have never explained what "reasonably believes" means in the context of immunity.  We have addressed similar language in other areas of law, however, and, in such areas, have found the term to encompass the dual standard that the plaintiff advocates.  In State v. West, 167 N.H. 465 (2015), we suggested that the jury be given the following instruction on the issue of whether a person "reasonably believes it necessary" to use non-deadly force under RSA 627:7 (2007):

> Thus, to find that the defendant was justified in using force, you must first find that the defendant actually believed that it was necessary to use force.  Then you must find that, under all the circumstances, the defendant's actual belief was a reasonable belief.  If the defendant's actual belief — that force was necessary — was not reasonable, you should not find his use of force was justified.

West, 167 N.H. at 471.  Similarly, in an insurance case, we held that "[t]he term 'reasonable belief' requires both that the driver have a subjective belief that he is 'entitled' to use the car and that such belief is objectively sound." Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 653 (2005).  We have also noted that "[t]he Rules of Professional Conduct define 'reasonably believes' to mean that 'the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.'" Lane's Case, 153 N.H. 10, 22 (2005).  Consistent with these cases, we conclude that an officer is entitled to official immunity only if the officer subjectively believed that his or her conduct was lawful and such belief was objectively reasonable. Nevertheless, this conclusion does not bring our analysis to an end.

11

Although "reasonably believes" includes both an objective and a subjective component, "reasonably" and its cognates have a particular meaning in the immunity context. See Yates v. United States, 135 S. Ct. 1074, 1082 (2015) ("Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things."). In general, "reasonable" means "[f]air, proper, or moderate under the circumstances; sensible." Black's Law Dictionary 1456 (10th ed. 2014). Black's Law Dictionary defines "reasonably believe" as "[t]o believe (a given fact or combination of facts) under circumstances in which a reasonable person would believe." Id. at 184. A "reasonable person," is "[a] hypothetical person used as a legal standard, esp. to determine whether someone acted with negligence." Id. at 1457. As these definitions suggest, "reasonableness" is closely associated with the absence of negligence. In many contexts, "reasonably" means that one did not act negligently. See Terry, Negligence, 29 Harv. L. Rev. 40, 42 (1915) ("The essence of negligence is unreasonableness; due care is simply reasonable conduct."). However, the meaning of "reasonably" is not immutable; it takes on varying meanings depending on the context in which it is used. See Zipursky, Reasonableness In and Out of Negligence Law, 163 U. Pa. L. Rev. 2131, 2133 (2015) ("The word 'reasonable' is a paradigmatic example of a standard in the law, and its meaning is, if nothing else, vague."); see also Iacobucci v. Boulter, 193 F.3d 14, 23 (1st Cir. 1999) ("[T]he reasonableness standards underlying the probable cause and qualified immunity inquiries are not coterminous.").

For immunity purposes, the failure to act "reasonably" must connote more than mere negligent actions. If it did not, immunity would serve no purpose because if an official were not negligent, he would not be liable at all and there would be no need for immunity. See Merrill v. Manchester, 114 N.H. 722, 728 (1974) ("The prevailing rule of torts today is that where there is negligence by an individual or a corporation liability follows. Immunity is the rare exception." (citation omitted)), superseded by statute, Laws 1975, 483:1, as recognized in Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694 (2013). For the added protection of official immunity to serve any purpose, then, the lack of a "reasonable belief" in this context necessarily must mean more than negligence. It implies that the official acted with a higher level of culpability, i.e., recklessly or wantonly.

Unlike Everitt, the claims here are for intentional torts. However, the reasonableness of the defendants' actions, and thus, the absence of negligence, is still a part of the analysis of both torts. To prevail on a claim for false imprisonment, a plaintiff must show four elements: (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority. Ojo v. Lorenzo, 164 N.H. 717, 726 (2013). Although "a lack of probable cause is not an element of false

12

imprisonment," probable cause is "a defense to a claim for false imprisonment resulting from a warrantless detention." Id. at 727. The four elements of a claim for malicious prosecution are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor. Id.

Probable cause, or the lack thereof, is an element of malicious prosecution and a defense to a claim of false imprisonment. Therefore, negligence, which, as we earlier explained, equates to a lack of the reasonableness required for probable cause, remains a critical part of the analysis for these claims notwithstanding that they are intentional torts. Because there would be no liability if the officer acted reasonably, immunity would not offer any real protection, even for these intentional torts, if it could be defeated by a mere showing of negligence.

Additionally, "objectively reasonable" has a particular meaning in the context of immunity. The proper standard is not the conduct expected of an individual who is disconnected from the situation. Rather, we consider objective reasonableness from the perspective of the actor in question. As the First Circuit stated in a qualified immunity case: "[T]his suit may go forward only if the unlawfulness of the arrest would have been apparent to an objectively reasonable officer standing in [the defendant]'s shoes." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004) (emphasis added); see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("Rather, objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." (citation and quotation omitted)).

Given the contours of "reasonably" and "objectively reasonable" in the immunity context, there is not the conflict between Huckins and Everitt that the plaintiff asserts. The trial court applied the recklessness standard from Everitt, which states that "municipal police officers are immune from personal liability for decisions, acts or omissions that are . . . not made in a wanton or reckless manner." Everitt, 156 N.H. at 219. The standard we articulated in Huckins permits immunity "for intentional torts committed by government officials or employees who act under a reasonable belief in the lawfulness of their conduct." Huckins, 166 N.H. at 182 (quotation omitted). Although the two standards may appear to be at odds because of the disparate language used, for the reasons explained above, the standards are in reality the same. We therefore hold that the determination of whether the defendants here are entitled to immunity from liability for the intentional tort claims brought by the plaintiff requires an inquiry into whether they acted recklessly or wantonly as to the lawfulness of their conduct.

13

C

The plaintiff argues that the trial court erred by not applying an objective standard when determining that the defendants were entitled to immunity. "We will uphold the trial court's findings and rulings unless they lack evidentiary support or are legally erroneous." N.H. Fish & Game Dep't v. Bacon, 167 N.H. 591, 596 (2015). Here, the trial court specifically found that although the officers' actions "may be deemed negligent," they were "not wanton or reckless." This satisfies the reasonableness standard required by Huckins.

We disagree with the plaintiff's characterization of the trial court's order as focusing only upon the officers' subjective belief. In making its determination that the officers did not act recklessly or wantonly, the court necessarily had to consider how the officers' actions deviated from what they should have done. In other words, implicit in the court's conclusion that the officers may have been negligent but were not reckless or wanton was a comparison of the officers' conduct with what a reasonable officer in their position would have done under the same or similar circumstances. Although the court phrased its ruling in terms of the common law regime, the ruling was not inconsistent with the constitutional standard set forth in Huckins, as we have now clarified it, and the ruling is supported by the evidence in the record.

Although the officers chose to rely upon RSA 644:4, I(f) in their charging decision, the uncontradicted evidence establishes that prior to arresting the plaintiff, the officers had sufficient trustworthy information, including the plaintiff's own admissions, to warrant a reasonable person to believe that the plaintiff had violated RSA 644:4, I(b), which has not been ruled unconstitutional, by "mak[ing] repeated communications [to his ex-girlfriend] at extremely inconvenient hours or in offensively coarse language with a purpose to annoy or alarm [her]." See RSA 594:13 ("If a lawful cause of arrest exists, the arrest will be lawful even though the officer charged the wrong offense or gave a reason that did not justify the arrest."); see also State v. Vandebogart, 139 N.H. 145, 163 (1994) (reciting standard for probable cause to arrest). The antagonism toward his ex-girlfriend reflected in the e-mails and their vituperative tone, particularly as displayed in the last e-mail, in which the plaintiff declared his intent to attend her birthday party and disrupt it by making disparaging comments about her, also at least arguably establish a basis for believing that fewer than 12 hours before his arrest the plaintiff had engaged in an act of abuse that posed a threat to his ex-girlfriend's safety. See RSA 173-B:1, I; RSA 594:10, I(b).

In sum, although the officers may have acted negligently in arresting the plaintiff without a warrant and in charging him under an unconstitutional subsection of the harassment statute, the record demonstrates as a matter of law that their actions did not rise to the level of reckless or wanton conduct

14

sufficient to strip them of protection under the objective component of the official immunity paradigm.

D

The plaintiff also argues that the trial court erred by granting summary judgment to the defendants because there is a genuine issue of material fact as to the officers' subjective belief in the lawfulness of their actions. We are not persuaded.

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Camire v. Gunstock Area Comm'n, 166 N.H. 374, 376 (2014) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. (quotation omitted). "We review the trial court's application of the law to the facts de novo." Id. Additionally, immunity rulings are legal questions, which we review de novo. See Conrad v. N.H. Dep't of Safety, 167 N.H. 59, 70-71 (2014).

The plaintiff contends that whether the officers actually had the subjective belief that they were acting lawfully should be a question for the jury. His theory is that, because of the ex-girlfriend's family connection to the Concord Police Department, the officers acted in bad faith and retaliated against him, leading to his unlawful arrest. Viewed in the light most favorable to the plaintiff, the only facts which support his theory are that: (1) his ex-girlfriend's father and uncle are retired Concord police officers and worked with Lieutenant Carroll; and (2) after arresting the plaintiff, Officer Pichler said, "This is what you get for f*****g with a 30-year veteran of the Concord, PD."[5] The plaintiff asserts that this evidence calls into question the officers' attestations that, at the time of the plaintiff's arrest, they believed they were acting lawfully, and shows that they in fact acted in bad faith.

We conclude that the foregoing evidence is not sufficient to raise a genuine issue of material fact as to the officers' belief that they were acting lawfully. We are mindful that in immunity cases, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). When the defendants moved for summary judgment, the plaintiff had to produce evidence. See RSA 491:8-a, IV (2010); ERA Pat Demarais Assoc's v. Alex. Eastman Found., 129 N.H. 89, 92 (1986). He does

---

[5] Pichler denies that he ever made such a statement to the plaintiff. Because there is a factual dispute as to this point, and because we must view the evidence in the light most favorable to the plaintiff, we assume that the statement was made.

not contend that there is more evidence he could potentially produce. Rather, he rests his theory and his argument that there is an issue of fact upon Pichler's single comment. The comment cannot bear the weight which the plaintiff asks it to carry.

To be sure, the comment may show Pichler's intent or motivation to protect someone with a connection to the Concord police, but it does not show an intent to do so <u>unlawfully</u>. The existence of evidence of bad motive does not undercut what an officer knows or believes. <u>Cf</u>. <u>Whren v. United States</u>, 517 U.S. 806, 812 (1996) (observing that the Court has never held "that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment"). In other words, there is no logical basis for inferring that an officer in Pichler's position would be more likely to make such a statement if he believed his conduct was unlawful than if he believed his conduct was lawful. In fact, in contrast to the plaintiff's thesis that the statement demonstrates an awareness of illegality, an argument to the contrary — that an officer who knew he was acting unlawfully would <u>not</u> offer such a statement about his motivation to the target of his malfeasance — is equally plausible.

IV

"[T]he purpose of immunity is to operate as a bar to a lawsuit, rather than as a mere defense against liability, and is effectively lost if a case is erroneously permitted to go to trial." <u>Everitt</u>, 156 N.H. at 221 (quotation omitted). Here, the plaintiff's proffered evidence does not create a genuine issue of material fact as to the officers' reasonable belief in the lawfulness of their actions. Therefore, we hold that the trial court did not err by granting summary judgment to the defendants on the grounds that they were entitled to official and vicarious immunity as a matter of law.

We once again note that this is a close case. However, we think that policy considerations weigh in favor of granting immunity to these officials. "Police officers are regularly called upon to utilize judgment and discretion in the performance of their duties. They must make decisions and take actions which have serious consequences and repercussions to the individuals immediately involved, to the public at large and to themselves." <u>Everitt</u>, 156 N.H. at 217. "The public safety entrusted to police officers demands that they remain diligent in their duties and independent in their judgments, without fear of personal liability. . . ." <u>Id</u>. at 217-18. This is especially true in circumstances such as the instant case, which involved a domestic violence situation. In these cases, the public is well-served if the police are able to respond quickly and do not have their actions hampered by worries of potential liability and of lawsuits in which their actions will be scrutinized through the near-perfect vision of hindsight. <u>See</u> <u>id</u>. at 218 ("The public simply cannot afford for those individuals charged with securing and preserving community safety to have their judgment shaded out of fear of subsequent lawsuits or to

have their energies otherwise deflected by litigation, at times a lengthy and cumbersome process.").

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.