Plymouth District Court
No. 2003-388

CARY SILVERSTEIN

v.

TOWN OF ALEXANDRIA

Argued: January 14, 2004
Opinion Issued: March 15, 2004

*Gabriel Nizetic,* of Plymouth, by brief and orally, for the plaintiff.

*Donahue, Tucker & Ciandella,* of Exeter (*Christopher L. Boldt* on the brief and orally), for the defendant.

NADEAU, J. In this action pursuant to RSA 159:6-c (2002), the plaintiff, Cary Silverstein, appeals an order of the Plymouth District Court (*Kent,* J.) upholding the defendant Town of Alexandria's denial of his application for a license to carry a concealed weapon. We affirm.

The record supports the following facts. On or about May 31, 2002, Silverstein applied to the police chief (chief) for the Town of Alexandria (Town) for a license to carry a concealed weapon. At some point in time, Silverstein and the chief had a discussion about Silverstein's criminal offenses and the chief requested that he provide transcripts of the court proceedings. Subsequently, Silverstein informed the chief that the Massachusetts court transcripts were unavailable, but that certified copies of case dispositions could be obtained. The chief suggested that he obtain them.

Several days later, on March 3, 2003, the chief issued a letter denying the application. The letter stated:

> After review of background data provided me regarding your pistol permit application, I have determined that you are not a suitable candidate to carry a concealed weapon. This decision is not made lightly and [is] without prejudice. It shall be the policy of this Chief to let the background information and criminal history stand on its own merits. You do have legal regress [*sic*] in the courts.

After receiving the letter, Silverstein tried to contact a Town official to resolve the license denial without going to court. On March 28, 2003, Silverstein attended a town meeting where a question was raised about whether he was actually a resident of the Town.

On April 3, 2003, Silverstein filed a petition in the district court seeking review of the chief's denial of the license. *See* RSA 159:6-c (2002). Following a hearing held on April 17, 2003, the district court denied the petition without prejudice, upholding denial of the license based upon lack of suitability. The court found that Silverstein had failed in his obligation to provide the chief with requested information. The court also found that

Silverstein was not a resident of the Town, and thus was required to apply to the director of state police for a license to carry.

Silverstein moved for reconsideration. Among other things, he argued that residency should not have been considered as a ground for denial of the license. The court denied the motion for reconsideration, finding that the chief had a reasonable basis for his determination that a permit should not issue. With respect to the issue of residency the court noted: "The fact that the Police Chief discovered some of the information after the denial of the permit is not important as the court cannot sanction the granting of a permit when there is evidence that it should not be granted." This appeal followed.

■ We first consider the standard of review for appeals pursuant to RSA 159:6-c. We have previously held that "the statute contemplates that the district court [will] hear evidence and make its own determination whether the petitioner is entitled to a license." *Kozerski v. Steere*, 121 N.H. 469, 472 (1981) (quotation omitted). In the absence of a sufficient record of the proceedings below, we assume the evidence supports the trial court's findings and review the record for errors of law. *Rix v. Kinderworks*, 136 N.H. 548, 553 (1992).

RSA 159:6, I (Supp. 2003) provides, in pertinent part, that a resident may apply to the selectmen of a town or a full-time police officer designated by them for a license to carry a concealed weapon. Non-residents seeking a license must apply to the director of state police or the director's designee. *Id.* The licensing authority shall issue a license if it appears that the applicant has good reason to fear injury to his or her person or property or has any proper purpose, and "is a suitable person to be licensed." *Id.* The statute further provides that the license shall be issued within fourteen days of application, and, if denied, the reason for such denial will be stated in writing and provided to the applicant. *Id.* Appeals from the denial of a license application are taken to the district court pursuant to RSA 159:6-c.

On appeal, Silverstein first argues that the district court erred in finding that the chief did not violate his rights by taking almost ten months to act upon his application. The Town contends that this issue is not properly before the court in an appeal pursuant to RSA 159:6-c. We agree. An appeal under RSA 159:6-c is limited to the issue of whether the petitioner is entitled to a license. A separate appeal avenue to superior court is provided for alleged violations of the licensing sections of RSA chapter 159 by a licensing authority. *See* RSA 159:6-e (2002). Accordingly, we do not reach this issue.

Silverstein next argues that the district court improperly admitted evidence related to his residency at the license denial hearing. Because the chief's denial letter was premised solely upon lack of suitability, Silverstein argues, the court should not have heard or considered "after-acquired" evidence bearing upon whether he was a resident of the Town. The Town, on the other hand, asserts that Silverstein has failed to provide us with any record that he objected to the admission of evidence of his residency, and further argues that, because residency is a precondition to licensure by the chief, it may be raised at any time.

■ The record reveals that the district court upheld the license denial, at least in part, upon an appropriate ground, *i.e.*, lack of suitability. Thus, we need not reach the evidentiary issue or the argument regarding use of an alternative ground to support the license denial. *Cf. Douglas v. Douglas*, 143 N.H. 419, 427 (1999) (court did not reach assertion of error in disqualifying defendant's brother as next friend and co-counsel because it upheld the trial court's decision upon other grounds).

Finally, Silverstein argues that, in deciding the appeal, the district court impermissibly shifted the burden of proof from the chief to him. This argument is premised, in large part, upon the court's oral ruling that:

> As far as the burden of providing information, I believe when the chief asked for original information to clarify, it shifts the burden of providing information to in fact the applicant to justify or provide further detail about whatever it says in the application or whatever information his investigation turns up.

Silverstein argues that the foregoing comments indicate that the district court relieved the chief of his obligation to show, by clear and convincing proof, that his denial of the license was justified. We disagree.

■ Although the burden of proof at the hearing is placed upon the licensing authority, the initial burden of establishing suitability before the licensing authority rested with the applicant. *See* RSA 159:6, I. The record reflects that, prior to acting upon the license application, the chief sought additional criminal background information relevant to the issue of suitability. Read in context with the court's other findings, it appears that the court considered evidence of Silverstein's failure to provide the requested information as further support for the chief's initial decision to deny the license based upon lack of suitability. *Cf. Drucker's Case*, 133

N.H. 326, 331 (1990). The court could make such a finding without shifting the ultimate burden of proof on whether the denial was justified.

The parties agree that the hearing record presented in support of the appeal is incomplete. The moving party is responsible for presenting a sufficient record to enable the court to decide the issue presented on appeal. SUP. CT. R. 13(3); *Murray v. Developmental Servs. of Sullivan County*, 149 N.H. 264, 267-68 (2003); *Rix*, 136 N.H. at 553. In the absence of such a record, we are constrained to assume that the evidence presented supports the trial court's decision and are limited to reviewing the record for errors of law. *Id.* Given the lack of any record of the Town's case in chief, it is impossible to reconstruct all the evidence supporting the license denial. There is evidence, however, that concerns about a significant and unexplained arrest history were expressed at the hearing and were relied upon by the court in rendering its decision. Accordingly, we find no error of law with respect to the court's decision upholding the license denial.

The remaining arguments and issues have either been addressed in the context of our foregoing analysis of other arguments or are without merit and warrant no further review. *See Town of Nottingham v. Bonser*, 146 N.H. 418, 430 (2001); *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.