Rockingham
Nos. 2008-606,
    2008-721

DAN GARAND

v.

TOWN OF EXETER & a.

Argued: March 17, 2009
Opinion Issued: July 31, 2009

*Law Offices of Penny S. Dean,* of Concord (*Penny S. Dean* on the brief and orally), for the plaintiff.

*Flygare, Schwarz & Closson, PLLC,* of Exeter (*Daniel P. Schwarz* on the brief and orally), for the defendants.

HICKS, J. The plaintiff, Dan Garand, appeals orders of the Superior Court (*McHugh,* J.): (1) dismissing his appeal from a decision of defendant Richard Kane, Chief of Police for defendant Town of Exeter, that denied the plaintiff a license to carry a loaded pistol or revolver (license to carry), *see* RSA 159:6 (Supp. 2008); and (2) denying his motion to introduce late authority to the court. We affirm.

The trial court found or the record supports the following facts. On April 14, 2008, the plaintiff filed an application with Kane for a license to carry. By letter dated April 22, 2008, Kane denied the application, specifically citing "many contacts [the plaintiff had] with the Exeter police department starting in 2001," including a number of arrests. Kane concluded:

> You have consistently showed a disregard for the law. You have displayed a violent behavior. You have threatened to kill a police officer. You have a history of drug use, which you denied to me on the phone. This type of behavior is of great concern to me in allowing you to carry a concealed weapon. As a result of the above

information, I am rejecting your application under my powers as outlined in RSA 159:6. According to RSA 159:6-c you may appeal this denial to the Exeter District Court within 30 days.

Instead of filing an appeal with the district court, the plaintiff filed with the superior court a pleading captioned, "PETITION FROM DENIAL OF LICENSE TO CARRY — PURSUANT TO NEW HAMPSHIRE RSA 159:6-c-f." (Bolding omitted.) The petition requested the court to "[o]rder the Town of Exeter to issue a license to carry to [the plaintiff]" and alleged, *inter alia*, that: (1) the plaintiff had a "proper purpose and was a suitable person to be licensed" (quotations omitted); (2) the denial failed to state any criminal conviction that would prohibit the plaintiff from possessing a gun; (3) "denial without valid statutory reason is in violation of . . . RSA 159:6"; and (4) "this petition is necessary in order to obtain compliance with RSA 159:6 et seq." Finally, the petition stated:

This Petition seeks judicial review and redress pursuant to RSA 159:6-e, a reversal of the licensing authority's denial, and the issuance of an order directing the Exeter Chief of Police to issue [the plaintiff's] license and an award of all attorneys' fees, and related costs and filing and other fees for the bringing of this Petition.

The defendants moved to dismiss, arguing that the action must be brought in district court rather than superior court. The superior court agreed and granted the defendants' motion. Following the denial of his motion for reconsideration, the plaintiff filed a motion to bring late authority to the attention of the superior court, which the court denied. The plaintiff appealed both the decision on the merits and the denial of the motion to submit late authority, and the two appeals were consolidated.

The plaintiff argues that the trial court erred: (1) in determining that the superior court has jurisdiction over only procedural violations of RSA 159:6; (2) in "refus[ing] to allow him to amend his Petition to allege that the Chief (through his agents) had in fact specifically violated RSA 159:6, II by demanding a copy of [his] drivers license"; (3) in failing to find that Part I, Article 15 of the State Constitution and the 14th Amendment to the Federal Constitution require that he be allowed to elect his choice of forum as provided by New Hampshire law; and (4) in refusing to allow the introduction of late authority.

Before addressing the plaintiff's arguments, we review the relevant statutes. RSA 159:6 provides, in pertinent part:

I. The selectmen of a town or the mayor or chief of police of a city or some full-time police officer designated by them respec-

tively, upon application of any resident of such town or city, . . . shall issue a license to such applicant authorizing the applicant to carry a loaded pistol or revolver in this state for not less than 4 years from the date of issue, if it appears that the applicant has good reason to fear injury to the applicant's person or property or has any proper purpose, and that the applicant is a suitable person to be licensed. Hunting, target shooting, or self-defense shall be considered a proper purpose. . . . The license shall be issued within 14 days after application, and, if such application is denied, the reason for such denial shall be stated in writing, the original of which such writing shall be delivered to the applicant . . . . The director of state police is hereby authorized and directed to prepare forms for the licenses required under this chapter and forms for the application for such licenses and to supply the same to officials of the cities and towns authorized to issue the licenses. No other forms shall be used by officials of cities and towns. . . .

II. No photograph or fingerprint shall be required or used as a basis to grant, deny, or renew a license to carry for a resident or nonresident, unless requested by the applicant.

RSA 159:6.

The two provisions specifically at issue are RSA 159:6-c (2002) and RSA 159:6-e (2002). RSA 159:6-c provides:

Appeal From Denial, Suspension, or Revocation. Any person whose application for a license to carry a loaded pistol or revolver has been denied pursuant to RSA 159:6 or whose license to carry a loaded pistol or revolver has been suspended or revoked pursuant to RSA 159:6-b may within 30 days thereafter, petition the district or municipal court in the jurisdiction in which such person resides to determine whether the petitioner is entitled to a license. The court shall conduct a hearing within 14 days after receipt of the petition. During this hearing the burden shall be upon the issuing authority to demonstrate by clear and convincing proof why any denial, suspension, or revocation was justified, failing which the court shall enter an order directing the issuing authority to grant or reinstate the petitioner's license. The court shall issue its decision not later than 14 days after the hearing on whether the petitioner is entitled to a license.

RSA 159:6-e, in turn, provides:

Violation. Any person aggrieved by a violation of the licensing sections of this chapter by a licensing entity may petition the

superior court of the county in which the alleged violation occurred for injunctive relief. The court shall give proceedings under this chapter priority on the court calendar. Such a petitioner may appear with or without counsel. The petition shall be deemed sufficient if it states facts constituting a violation of the licensing sections of this chapter by the licensing entity, and may be filed by the petitioner or the petitioner's counsel with the clerk of court or the justice. The clerk of court or any justice shall order service by copy of the petition on the licensing entity or a person employed by the entity. If the justice finds that time is of the essence, the justice may order notice by any reasonable means, and shall have authority to issue an order ex parte when the justice reasonably deems such an order necessary to insure compliance with the provisions of this chapter.

The plaintiff contends that "[b]oth statutes provide an avenue for appeal from a violation of RSA 159:6" and that the plaintiff may choose either forum. The trial court disagreed, ruling:

A person is charged with the responsibility of petitioning either the district or superior court depending upon how his application for a license to carry a weapon has been considered by a town. If for example a town simply ignores an application or formally denies an application without giving any reasons for such a decision then the aggrieved person's only remedy is seeking an injunction in superior court forcing the town to comply with the requirements of the statute. If however a person has received a letter from a town denying an application complete with specifics as to why that application was denied, then the town has complied with its licensing requirement under RSA 159. In that event a person's only remedy is to appeal the factual determination by the town to the local district court.

The issue before us is one of statutory construction, which we review *de novo*, *Formula Dev. Corp. v. Town of Chester*, 156 N.H. 177, 178 (2007), applying well-settled standards:

We are the final arbiter of the intent of the legislature as expressed in the words of the statute. When construing the statute's meaning, we first examine its language, and where possible, ascribe the plain and ordinary meanings to words used. If the language used is clear and unambiguous, we will not look beyond the language of the statute to discern legislative intent.

We will, however, construe all parts of the statute together to effectuate its overall purpose and to avoid an absurd or unjust result.

*Formula Dev.*, 156 N.H. at 178-79 (citations omitted). "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." *Town of Amherst v. Gilroy*, 157 N.H. 275, 279 (2008). We also "presume that the legislature does not enact unnecessary and duplicative provisions." *State v. Gifford*, 148 N.H. 215, 217 (2002). Finally, "we interpret statutes in the context of the overall statutory scheme and not in isolation." *State v. Balliro*, 158 N.H. 1, 4 (2008) (quotation omitted).

RSA 159:6-e "is part of a statutory scheme that requires individuals to obtain permits to carry loaded concealed weapons." *Bleiler v. Chief, Dover Police Dep't*, 155 N.H. 693, 696 (2007). RSA 159:6 directs the appropriate licensing authority to issue a license to an applicant "if it appears that the applicant has good reason to fear injury to the applicant's person or property or has any proper purpose, and that the applicant is a suitable person to be licensed." RSA 159:6, I. Thus, the licensing authority is required to make two — and only two — determinations in deciding whether to grant a license: (1) whether the applicant has either (a) good reason to fear injury to his person or property or (b) any proper purpose; and (2) whether the applicant is "a suitable person to be licensed." *Id.*

We discussed these determinations in *Bleiler* in the context of a license revocation. We noted:

> By statute, hunting, target shooting and self-defense are proper purposes. RSA 159:3 (2002) and RSA 159:3-a (2002) provide that certain convicted felons are unsuitable for the purposes of obtaining a license to carry a concealed weapon. An individual may also be unsuitable if he or she has a "significant and unexplained arrest history."

*Bleiler*, 155 N.H. at 702 (citation omitted) (quoting *Silverstein v. Town of Alexandria*, 150 N.H. 679, 683 (2004)). We concluded that "[i]n light of the statutory limitations on the phrase 'proper purpose' and the judicial narrowing of the term 'suitable person,' discussed above, . . . RSA 159:6-b [the revocation provision] is not unconstitutionally vague on its face." *Id.* at 703.

RSA 159:6 also contains certain mandatory provisions primarily regarding the form of the application, certain information the licensing authority may not require or use in making the decision to issue or deny a license, the time frame in which the decision must be made, and the form of notification

of denial. Execution of these provisions does not require a determination by the licensing authority, but merely compliance with their terms.

The plaintiff counters the argument that RSA 159:6-e applies only to "procedural violations of the licensing statute, such as a demand for fingerprints or photographs in violation of RSA 159:6[,] II," by asserting that "[i]f the legislature had wanted to, it could have clearly required that the remedy found in RSA 159:6-e was limited to violations by the licensing entities pertaining to the mandated forms. It did not do so." The plaintiff therefore concludes that denial of a license to a qualified applicant is a violation of the "licensing sections" of RSA chapter 159 within the meaning of RSA 159:6-e.

While the term "licensing sections," RSA 159:6-e, taken alone, does not clearly refer only to the procedural requirements of RSA 159:6, we conclude that RSA 159:6-e, read as a whole and construed in light of RSA 159:6 and RSA 159:6-c, applies only to alleged derelictions of a licensing authority's ministerial duties and does not provide a means to appeal a determination that the applicant does not meet the suitability or proper purpose requirements for licensure.

First, unlike RSA 159:6-e, RSA 159:6-c is, according to its title, an appeal provision. "While the title of a statute is not conclusive of its interpretation, it provides significant indication of the legislature's intent in enacting the statute." *State v. Gubitosi*, 157 N.H. 720, 725 (2008). We have consistently interpreted RSA 159:6-c as an appeal provision and noted that its scope "is limited to the issue of whether the petitioner is entitled to a license." *Silverstein v. Town of Alexandria*, 150 N.H. 679, 681 (2004). Interpreting a prior version of the statute, we "consider[ed] the standard of review in RSA 159:6-c (Supp. 1979) appeals," *Kozerski v. Steere*, 121 N.H. 469, 471 (1981), and reasoned:

> Unlike many other appeal statutes, *e.g.* RSA 541:13; RSA 31:78 (Supp. 1979), there is no requirement under RSA 159:6-c (Supp. 1979) that any presumption of reasonableness be accorded the decision of the selectmen. It appears to us that the statute contemplates that the district court would hear evidence and make its own determination "whether the petitioner is entitled to a license."

*Kozerski*, 121 N.H. at 472.

The statute was amended in 1998 to place the burden upon the issuing authority "to demonstrate by clear and convincing proof why any denial, suspension, or revocation was justified." RSA 159:6-c. Although the statu-

tory standard of review is far from deferential, RSA 159:6-c still clearly provides an *appeal* from a *decision* of the issuing authority.

■ RSA 159:6-e, on the other hand, does not contain the word "appeal" or anything suggesting that it prescribes an appellate process. *See* RSA 159:6-e. Rather, it provides a mechanism for obtaining "injunctive relief." *Id.* The issuance of an injunction is an exercise of original, not appellate, jurisdiction. *See Consol. Freightways v. Human Rights Com'n,* 713 N.E.2d 148, 150 (Ill. App. Ct. 1999) (noting that "[a]n action for injunctive relief implicates the original jurisdiction of the [trial] court"); *City of Laredo v. Martin,* 52 Tex. 548, 554 (1878) ("[I]ssuing an injunction for . . . a purpose [other than when necessary to enforce the jurisdiction of the issuing appellate court] would be the exercise of original, and not of appellate, jurisdiction in the case."). Thus, we conclude that RSA 159:6-e does not provide a means for appealing a *decision* (*i.e.,* a determination that the applicant does not meet the suitability or proper purpose requirements for licensure) of the licensing authority. Rather, it offers a means of enforcing those procedural provisions of RSA chapter 159 that require strict compliance by the licensing authority rather than the exercise of deliberation. Indeed, the remedy of injunctive relief is well suited to enforcing such provisions. The term "violation," which is the title of RSA 159:6-e, connotes a breach of duty rather than an error in deliberative decision-making. *See* BLACK'S LAW DICTIONARY 1600-01 (8th ed. 2004) (defining "violation" to include "the contravention of a right or duty").

We note that in *Silverstein,* after stating that "[a]n appeal under RSA 159:6-c is limited to the issue of whether the petitioner is entitled to a license," we stated in *dicta* that "[a] separate appeal avenue to superior court is provided for alleged violations of the licensing sections of RSA chapter 159 by a licensing authority. *See* RSA 159:6-e (2002)." *Silverstein,* 150 N.H. at 681. We now clarify that our reference to RSA 159:6-e as an avenue of appeal was mistaken; a petition under that section is addressed to the original jurisdiction of the superior court.

Having found the legislative intent unambiguously expressed in the plain meaning of the words used, we need not address the plaintiff's argument based upon legislative history. *See Weare Land Use Assoc. v. Town of Weare,* 153 N.H. 510, 511 (2006) (noting that we "will not examine legislative history unless the statutory language is ambiguous"). Moreover, having found that RSA chapter 159 does not provide a choice of appellate forum, we need not address the plaintiff's argument regarding the alleged constitutional requirement that he "be allowed to elect his choice of forum as clearly mandated by New Hampshire law and envisioned by the legislature." (Bolding omitted.)

The plaintiff next argues that the trial court erred: (1) by suggesting that he was trying to bootstrap his argument that the court had jurisdiction by referencing a violation of RSA 159:6, II; and (2) by not allowing him to amend his petition to allege such a violation. In order to properly address these arguments, we trace their procedural history.

The first reference to RSA 159:6, II in the record before us appears in the plaintiff's objection to the motion to dismiss for lack of jurisdiction. There the plaintiff "claim[ed] that the Chief violated [RSA] 159:6[,] II by essentially demanding a photograph." He further alleged:

> The male dispatcher/officer of the Exeter Police Department that received [the plaintiff's] application demanded that [the plaintiff] provide his driver license with his Application for a Resident Pistol/Revolver License; as further evidence that this is the pattern and practice of the Exeter Police Department the Exeter Police Chief personally demanded to copy my father's drivers license when my father applied for a Pistol/Revolver License in the past month.

The defendants filed a responsive pleading, noting that a violation of RSA 159:6, II was not alleged in the plaintiff's petition. The plaintiff then filed a further response, arguing, *inter alia*, that "if the court finds the original Petition defective . . . [for failing to specifically allege a violation of RSA 159:6, II, then the plaintiff] should be given an opportunity to amend."

In its order granting the motion to dismiss, the trial court ruled:

> Although the plaintiff references [RSA 159:6, II] in his memorandum in support of his belief that this Court has jurisdiction to hear his appeal, the Court notes that in the appeal itself said section was never mentioned. Thus the reference to it in the memorandum is merely a red herring. The plaintiff cannot now attempt to bootstrap his claim that this Court has jurisdiction by referencing RSA 159:6[,] II in a memorandum of law. Moreover the Court adopts the defendant's position on the applicability of said section even if it was ripe for decision on its merits.

Presumably the court's final reference is to the defendants' contention that "a driver's license is not a photograph and thus taking a copy of it did not violate RSA 159:6, II."

The plaintiff moved for reconsideration, requesting in his prayer for relief that "[i]f the court's denial of the Petition hinges on [the plaintiff] not having clearly alleged the photograph violation of [RSA] 159:6[,] II in his original Petition, [the court] allow the [plaintiff] to amend his Petition to

allege that violation." The court reversed its position on the violation of RSA 159:6, II, but still denied the motion, ruling:

> In an apparent effort to keep this case in Superior Court, the plaintiff has argued that the defendant has violated RSA 159:6. . . . To the extent therefore that the defendant did request a photograph or fingerprint before agreeing to grant a license to the plaintiff, the Court finds that such a request was improper. However it is clear that the basis for the denial is the character of the plaintiff himself which is detailed specifically in the Chief of Police rejection letter. The legislature intended this type of character dispute to be heard in the District Court. Accordingly, the plaintiff's Motion for Reconsideration is denied.

We find no error. The trial court correctly concluded that the inclusion in the plaintiff's petition of an alleged violation of RSA 159:6, II would not vest it with jurisdiction over the plaintiff's appeal of Kane's determination that he was not a suitable person for licensure. The court also correctly concluded that even if it took cognizance of the only claim over which it had jurisdiction — the alleged violation of RSA 159:6, II — it could not grant the plaintiff the relief he seeks (issuance of a license) in light of the not yet validly challenged finding that he is not a suitable person for licensure. We express no opinion as to whether the defendants violated RSA 159:6, II by requesting the plaintiff's driver's license.

Finally, the plaintiff argues that the trial court erred by refusing to allow the introduction of late authority. Specifically, he sought to introduce *McQuade v. Donovan*, Rockingham Cty. Super. Ct., No. 04-E-0507, a case in which the plaintiff asserts the superior court exercised jurisdiction over a claim factually similar to the instant one. The defendants dispute the relevance of the *McQuade* case.

It appears from the record provided us that the plaintiff in *McQuade* filed an action in superior court captioned as a petition under RSA 159:6-c from denial of a license to carry. A hearing was scheduled, but continued by assented-to motion in which the parties expressed hope that an "extrajudicial resolution" could be achieved. The case was later terminated by stipulated "neither party" docket markings. The plaintiff considers *McQuade* evidence that the superior court routinely and properly hears cases filed pursuant to RSA 159:6 *et seq.* and that it exercised jurisdiction pursuant to RSA 159:6.

We review the trial court's ruling for an unsustainable exercise of discretion. *Cf. Farris v. Daigle*, 139 N.H. 453, 454 (1995) ("Whether to receive further evidence on a motion for reconsideration rests in the sound discretion of the trial court."). "To show that the trial court's decision is not

sustainable, the [party] must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Lambert*, 147 N.H. 295, 296 (2001) (quotation omitted).

We find no reversible error because, even assuming *McQuade* supported the plaintiff's position, he cannot now show prejudice in light of our holding herein that the superior court does not have subject matter jurisdiction over RSA 159:6-c proceedings. As "we are the final arbiter of the intent of the legislature as expressed in the words of the statute," *Formula Dev.*, 156 N.H. at 178, a contrary decision by the superior court has no precedential value. Thus, the plaintiff cannot be prejudiced by the trial court's failing to consider a case that purportedly advances a legal proposition we have rejected. Accordingly, we uphold the trial court's denial of the plaintiff's motion to introduce late authority.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.