NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2014-0721


SCOTT L. BACH & a.

v.

NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: February 10, 2016
Opinion Issued: June 2, 2016


Cohen & Winters, PLLC, of Concord (Andrew S. Winters on the brief), and Hartman & Winnicki, P.C., of Ridgewood, New Jersey (Daniel L. Schmutter on the brief and orally), for the petitioners.


Joseph A. Foster, attorney general (Dianne Martin, assistant attorney general, on the memorandum of law and orally), for the respondent.


BASSETT, J. The petitioners, Scott L. Bach and the Association of New Jersey Rifle and Pistol Clubs, Inc. (ANJRPC), appeal a decision of the Superior Court (Smukler, J.) entering summary judgment in favor of the respondent, the New Hampshire Department of Safety (Department). The petitioners had challenged, as ultra vires and invalid, Department administrative rules that require nonresidents applying for a concealed-carry license in New Hampshire to provide proof of a "resident state license" to carry a concealed weapon. The

trial court concluded that the administrative rules were valid. Because we conclude that the rules at issue are ultra vires, we reverse and remand.

The following facts are undisputed. Bach, a New Jersey resident, does not possess a New Jersey license to carry a concealed weapon. From 2004 to 2013, he held a New Hampshire nonresident license to carry a concealed pistol or revolver. He did not apply to renew his license when it expired in 2013.

The ANJRPC is a nonprofit corporation in New Jersey. It states that it is comprised of "more than one million law-abiding firearms owners, target shooters, hunters, competitors, outdoors people, and those with an interest in supporting and defending the Second Amendment." (Quotation omitted.)

In July 2013, new administrative rules became effective that "set forth the procedures for nonresidents who wish to obtain a license to carry a [concealed] revolver or pistol in New Hampshire." N.H. Admin. Rules, Saf-C 2101.01. The rules require applications for a concealed-carry license to include the applicant's name, address, date of birth, physical description, occupation, whether he or she has ever been previously denied a pistol permit or license, and his or her resident state license number. N.H. Admin. Rules, Saf-C 2102.01-.02. "[R]esident state license" is defined as "a license to carry a pistol or revolver concealed in the state where the applicant resides." N.H. Admin. Rules, Saf-C 2102.03(a) (quotation omitted). The rules further provide that "[n]o nonresident license shall be issued unless the applicant provides a copy of the applicant's resident state license, or unless the applicant displays, for verification, a resident state license." N.H. Admin. Rules, Saf-C 2102.03(b).

After an application is submitted, the State Police Permits and Licensing Unit conducts a background check to determine whether the nonresident applicant is "suitable" to be issued a license to carry a concealed weapon in New Hampshire. See RSA 159:6 (Supp. 2015) (providing that a concealed-carry license "shall issue . . . if it appears that the applicant . . . has any proper purpose, and that the applicant is a suitable person to be licensed" (emphasis added)); see also RSA 159:4 (2014) (stating that "[n]o person shall carry a loaded pistol or revolver . . . concealed upon his person, except in his dwelling, house or place of business, without a valid license therefor as hereinafter provided"). When conducting the background check, state officials, in addition to using certain national databases, rely upon records maintained at the state and local level, such as records pertaining to drug addiction, involuntary mental health commitments, and protection orders — any of which could lead to a denial of a concealed-carry license. See N.H. Admin. Rules, Saf-C 2103.01(b) (listing reasons to deny a concealed-carry license).

In October 2013, the petitioners filed a petition for declaratory judgment. The petitioners argued that, because RSA 159:6 does not require nonresidents to produce proof of their resident state licenses to obtain concealed-carry

licenses in New Hampshire, the administrative rules requiring this proof are invalid and unenforceable. The petitioners also raised various constitutional and statutory claims. The Department moved for summary judgment, arguing that the ANJRPC lacked standing, and that the petitioners' claims lacked merit.

The trial court granted the Department's motion, concluding that the ANJRPC lacked standing, and rejecting Bach's constitutional and statutory claims. The trial court explained that, although "New Hampshire residents and nonresidents generally have the right to carry a pistol or revolver on their person so long as it is not concealed," see RSA 159:4, there is neither a state nor federal constitutional right to carry a loaded concealed weapon, and, even assuming that such a right existed, the administrative rules at issue do not unreasonably infringe upon that right. The trial court also stated that the State "has a compelling interest in protecting the public from certain dangers involved with pistols and revolvers," which was sufficient to justify the administrative rules at issue. The trial court observed that RSA 159:6 "contemplates access to information about an applicant because such information is necessary to determine whether the applicant is suitable," and agreed with the Department that the administrative rules at issue are a "reasonable aid in the New Hampshire determination of the suitability of nonresident applicants" and "allow[] New Hampshire to ascertain the nonresident's ongoing eligibility" for a concealed-carry license. This appeal followed.

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Farrelly v. City of Concord, 168 N.H. ___, ___, 130 A.3d 548, 561 (2015) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. at ___, 130 A.3d at 561-62 (quotation omitted). "We review the trial court's application of the law to the facts de novo." Id. at ___, 130 A.3d at 562 (quotation omitted).

On appeal, the petitioners argue that the trial court's decision should be reversed because: (1) the administrative rules at issue change the requirements of RSA 159:6 and are, therefore, ultra vires and invalid; and (2) the administrative rules violate the guarantee of equal protection under the State and Federal Constitutions. The Department counters that the petitioners' claim that the rules are ultra vires is not preserved, and that, regardless, the administrative rules are consistent with RSA 159:6. The Department further argues that the petitioners' equal protection argument fails under both the State and Federal Constitutions.

We also note that the parties dispute whether the ANJRPC has standing in this case. We, however, need not decide that issue because there is no

3

dispute that Bach has standing, and Bach and the ANJRPC advance the same arguments as to the merits of the issues before us.

"Because we decide cases on constitutional grounds only when necessary, when a claim of error is based upon both a statutory provision and a constitutional provision, we first will address the statutory argument." State v. Brouillette, 166 N.H. 487, 489 (2014) (quotation omitted). Accordingly, we will first address the petitioners' argument that the challenged administrative rules are ultra vires.

As a threshold matter, the Department asserts that this argument is not preserved because "nowhere in their original Petition did [the petitioners] include such a claim." We disagree. Although the petitioners did not use the term "ultra vires" in their petition for declaratory judgment, they did assert that "[n]owhere in RSA [159:6] does New Hampshire law require that a non-resident must first have a license from his state of residence," and, further, that there "is no basis in law to require such licensing of the non-resident as a prerequisite to eligibility for a New Hampshire non-resident license." Moreover, in their objection to the Department's motion for summary judgment, the petitioners argued that the challenged administrative rules "add to, detract from, or modify" RSA 159:6. (Quotation omitted.) Given the arguments made by the petitioners before the trial court, we conclude that their ultra vires argument is preserved. See State v. Bruce, 147 N.H. 37, 40 (2001) (concluding that due process argument was preserved because, although trial counsel did not use term "due process," counsel sufficiently alerted trial judge "to the legal basis for his argument" (quotation omitted)).

The petitioners assert that requiring a nonresident applicant to "produce a home state permit . . . fundamentally and unlawfully alter[s] the requirements of RSA 159:6." (Bolding and capitalization omitted.) They argue that, because it is "nearly impossible to satisfy" the requirements for obtaining a concealed-carry license in states like New Jersey, the administrative rules effectively impose a higher standard than the "suitability" standard contained in RSA 159:6. The Department counters that the rules are "consistent with" the suitability requirement of RSA 159:6. According to the Department, the "requirement that a nonresident present a resident state license" to carry a concealed weapon "addresses th[e] lack of information" that the Department has regarding the suitability of nonresidents to carry a concealed weapon in this state, and allows the Department to "ensure the ongoing eligibility of nonresident license to carry holders."

Addressing these arguments requires us to interpret statutes and administrative rules; therefore, our review is de novo. See Appeal of Keelin B., 162 N.H. 38, 42 (2011). We use the same principles of construction when interpreting both statutes and administrative rules. Petition of Parker, 158 N.H. 499, 502 (2009). "In construing rules, as in construing statutes, where

4

possible, we ascribe the plain and ordinary meaning to the words used." <u>Doe v. N.H. Dep't of Safety</u>, 160 N.H. 474, 477 (2010) (quotation omitted).

Although it "is well settled that the legislature may delegate to administrative agencies the power to promulgate rules necessary for the proper execution of the laws," the "authority to promulgate rules and regulations is designed only to permit the [agency] to fill in the details to effectuate the purpose of the statute." <u>Appeal of Mays</u>, 161 N.H. 470, 473 (2011) (quotation omitted). "Thus, administrative rules may not add to, detract from, or modify the statute which they are intended to implement." <u>Id</u>. (quotation omitted).

RSA 159:6 is "part of a statutory scheme that requires individuals to obtain permits to carry loaded, concealed weapons." <u>Bleiler v. Chief, Dover Police Dep't</u>, 155 N.H. 693, 696 (2007). The statute provides, in pertinent part, that a license to carry a concealed pistol or revolver "shall" be issued "if it appears that the applicant has good reason to fear injury to the applicant's person or property or has any proper purpose, and that the applicant is a <u>suitable person to be licensed</u>. Hunting, target shooting, or self-defense shall be considered a proper purpose." RSA 159:6, I(a) (emphasis added). Although the statutory scheme does not define the term "suitable," it provides that some groups of people, such as felons convicted of certain crimes, are unsuitable for the purposes of obtaining a license to carry a concealed weapon. <u>See</u> RSA 159:3-a. "An individual may also be unsuitable if he or she has a significant and unexplained arrest history." <u>Garand v. Town of Exeter</u>, 159 N.H. 136, 141 (2009) (quotations omitted).

The administrative rules at issue here require nonresidents seeking to obtain licenses to carry a concealed pistol or revolver in New Hampshire to submit proof of their resident state licenses. <u>See</u> <u>N.H. Admin. Rules</u>, Saf-C 2102.01-.03. However, this requirement is found nowhere in RSA 159:6. Rather, under RSA 159:6, the licensing authority has the authority to "make two — and only two — determinations in deciding whether to grant a license: (1) whether the applicant has either (a) good reason to fear injury to his person or property or (b) any proper purpose; and (2) whether the applicant is a suitable person to be licensed." <u>Garand</u>, 159 N.H. at 141 (quotation omitted). By requiring nonresidents to submit proof of their resident state licenses, the administrative rules effectively import into New Hampshire law requirements different from those set forth in RSA 159:6 — namely, those requirements that residents of other states must satisfy in order to obtain a concealed-carry license in their home states.

For example, an applicant seeking to obtain a permit to carry a handgun — concealed or otherwise — in New Jersey must demonstrate that he or she has a "justifiable need to carry a handgun." N.J. Stat. Ann. § 2C:58-4(c)-(d) (West 2015); <u>see</u> N.J. Admin. Code § 13:54-2.3(a)(3) (2016). In order to establish a "justifiable need" in New Jersey,

a private citizen shall specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun. Where possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies.

N.J. Admin. Code § 13:54-2.4(d)(1) (2016). One commentator has noted that in New Jersey "it is essentially impossible for anyone except a retired police officer to obtain a permit" to carry a handgun given the "justifiable need" requirement. Kopel, Pretend "Gun-Free" School Zones: A Deadly Legal Fiction, 42 Conn. L. Rev. 515, 520 (2009). The Appellate Division of the Superior Court of New Jersey observed that "[r]egardless of training and absence of a disqualifying condition, a well-trained and wholly law-abiding and responsible person cannot lawfully carry a firearm in a public place unless that person can demonstrate that he or she has a justifiable need to carry a handgun." In re Wheeler, 81 A.3d 728, 740 (N.J. Super. Ct. App. Div. 2013) (quotation omitted). Thus, although a New Jersey resident may be able to satisfy the two requirements of RSA 159:6 — that he has a "proper purpose" and "is a suitable person to be licensed" — he may not be able to obtain a concealed-carry license in New Hampshire because he is not able to satisfy the New Jersey "justifiable need" requirement.

A similarly anomalous result could occur under other circumstances as well. For example, as the Department acknowledged during oral argument, if another state prohibited the carrying of concealed weapons, then, under the existing regulatory scheme, residents of that state would be unable to obtain a New Hampshire license to carry a concealed weapon, irrespective of whether the applicant had a proper purpose and was otherwise suitable. See District of Columbia v. Heller, 554 U.S. 570, 626 (2008) (recognizing that, historically, most courts have upheld prohibitions on carrying concealed weapons).

Nonetheless, the Department argues that requiring nonresidents to submit their resident state licenses is necessary to "address[] th[e] lack of information" that the Department has regarding the suitability of nonresidents to carry concealed weapons in this state. We are not persuaded. Even assuming that the need for information justifies the promulgation of rules regarding suitability, that need does not justify the rules at issue here.

As we have observed, although the applicant must initially demonstrate suitability, see Silverstein v. Town of Alexandria, 150 N.H. 679, 682 (2004), the ultimate burden of proving the lack of suitability rests with the licensing authority, see RSA 159:6-c. Consequently, in order to obtain a concealed-carry license in New Hampshire, it is incumbent upon an applicant to provide sufficient information to the Department to prove his suitability. See

<u>Silverstein</u>, 150 N.H. at 682.  Given this burden, we see no need for the administrative scheme to require a nonresident applicant to supply proof that the applicant has a resident state license.  As the petitioners correctly observe, a nonresident applicant could provide the Department with sufficient information regarding his suitability in ways other than providing proof of a resident state license.

Further, we cannot disregard the fact that residents of certain states, like New Jersey, may simply be unable to satisfy state requirements for a license that differ from New Hampshire's statutory requirements.  Because the rules at issue here effectively incorporate into New Hampshire's requirements for concealed-carry licenses the requirements established by other states for the issuance of concealed-carry licenses, the rules change the requirements of RSA 159:6, and thus, "add to, detract from, or modify the statute which they are intended to implement," <u>Mays</u>, 161 N.H. at 473 (quotation omitted).  Accordingly, we conclude that the challenged rules — requiring nonresidents to provide proof that they hold resident state licenses in order to obtain concealed-carry licenses in New Hampshire — are ultra vires and, therefore, invalid.  <u>See</u> <u>Formula Dev. Corp. v. Town of Chester</u>, 156 N.H. 177, 182 (2007) (noting that, to the extent administrative rules added to, detracted from, or modified our interpretation of a statute, the rules were ultra vires).

Because we hold that the rules are ultra vires, we need not address the petitioners' constitutional argument.  Finally, any issues raised in the notice of appeal that were not briefed are deemed waived.  <u>See</u> <u>Waterfield v. Meredith Corp.</u>, 161 N.H. 707, 713 (2011).

<u>Reversed and remanded</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.