NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2019-0727

GENWORTH LIFE INSURANCE COMPANY

v.

NEW HAMPSHIRE DEPARTMENT OF INSURANCE

Argued: November 19, 2020
Opinion Issued: February 17, 2021

Cook, Little, Rosenblatt & Manson, p.l.l.c., of Manchester (Arnold Rosenblatt and Kathleen M. Mahan on the brief), and Saul Ewing LLP, of Philadelphia, Pennsylvania (Paul M. Hummer and Sean T. O'Neill on the brief, and Mr. Hummer orally), for the plaintiff.

Gordon J. MacDonald, attorney general (Samuel R.V. Garland, assistant attorney general, and Anthony J. Galdieri, senior assistant attorney general, on the brief, and Mr. Garland orally), for the defendant.

DONOVAN, J. The plaintiff, Genworth Life Insurance Company, challenges amended regulations promulgated by the New Hampshire Department of Insurance (Department) retroactively limiting rate increases for long-term care insurance (LTCI) policies. The plaintiff is an insurer that provides LTCI to over 6,000 New Hampshire residents. It appeals orders of the

Superior Court (Tucker, J.) dismissing its claim that the regulations violate the contract clauses of the State and Federal Constitutions, and entering summary judgment for the Department with respect to the plaintiff's claims that the regulations are ultra vires and violate the takings clauses of the State and Federal Constitutions. Because we conclude that the regulations are ultra vires, and, therefore, invalid, we reverse and remand.

I. Facts

The record supports the following facts. The Long-Term Care Insurance Act governs LTCI policies issued in New Hampshire. See RSA ch. 415-D (2015). LTCI policies cover costs associated with long-term care, such as nursing homes and assisted living. The LTCI Act requires the Insurance Commissioner to "issue reasonable rules to promote premium adequacy and to protect the policyholder in the event of substantial rate increases, and to establish minimum standards for marketing practices, agent compensation, agent testing, penalties and reporting practices." RSA 415-D:12. As relevant here, the purpose of the LTCI Act is "to promote the public interest, to promote the availability of [LTCI] policies, . . . and to facilitate flexibility and innovation in the development of [LTCI] coverage." RSA 415-D:1.

In 2004, the Commissioner issued regulations governing premium rate schedule increases for LTCI policies. Previously, the regulations governing LTCI policies imposed a minimum anticipated loss-ratio standard of 60 percent, meaning that for every dollar an insurer anticipated receiving in premiums, it was expected to spend no less than 60 cents on claims. The regulations permitted insurers to increase premium rates provided that the increases did not cause the policies to fall below the loss-ratio standard. By contrast, the 2004 regulations required insurers to obtain the Commissioner's approval before increasing premium rates. See N.H. Admin. R., Ins 3601.19(b)(5) (2004). To obtain approval, insurers had to satisfy more stringent loss-ratio standards and certify that requested increases were actuarially justified. See N.H. Admin. R., Ins 3601.19(b)-(c) (2004). The 2004 regulations applied only to LTCI policies issued on or after the regulations' effective date. See N.H. Admin. R., Ins 3601.19(a) (2004).

In 2014, the Commissioner proposed several amendments to the rate-increase regulations (Amended Regulations). The Amended Regulations, which became effective in 2015, allow insurers to increase rates once every three years, subject to the Commissioner's approval.[1] See N.H. Admin. R., Ins 3601.19(b)(5), (d) (2015). The Amended Regulations also slightly alter the loss-

---

[1] The Commissioner subsequently amended the rate-increase regulations in 2018. However, because the 2018 amendments did not change the relevant language of the Amended Regulations, they do not impact our consideration of the plaintiff's appeal. See N.H. Admin. R., Ins 3601.19 (2018).

ratio and actuarial-certification requirements from the 2004 regulations.  See N.H. Admin. R., Ins 3601.19(b)-(c) (2015).  Most notably, however, the Amended Regulations cap the maximum percentage rate increases for LTCI policies based upon the attained age of the policyholders.  See N.H. Admin. R., Ins 3601.19(f) (2015).  According to Table 3601.1 in the Amended Regulations, insurers may obtain larger percentage rate increases for policyholders with lower attained ages, and smaller increases for policyholders with higher attained ages.  Id.  The Amended Regulations provide that the Commissioner "shall not approve" any requested increase that exceeds the caps.  Id.  Unlike the 2004 regulations, the Amended Regulations apply to rate increases on all LTCI policies, including those issued before the amendments.  See N.H. Admin. R., Ins 3601.19(a) (2015).

In 2016, the plaintiff sought declaratory and injunctive relief against the Department, challenging the validity of the rate-increase caps imposed by the Amended Regulations.  Specifically, the plaintiff argued that the Amended Regulations are invalid because they are ultra vires, meaning that they exceed the Commissioner's statutory authority under RSA 415-D:12, which mandates the Commissioner to issue reasonable rules to promote premium adequacy, to protect policyholders in the event of substantial rate increases, and to establish minimum standards for marketing practices, agent compensation, agent testing, penalties and reporting practices.  See RSA 415-D:12.  The plaintiff also argued that the Amended Regulations violate the contract and takings clauses of the State and Federal Constitutions.  See U.S. CONST. art. I, § 10, cl. 1, amend. V; N.H. CONST. pt. I, arts. 12, 23.  On the Department's motion, the trial court dismissed the contract clause claim.  Both parties then moved for summary judgment on the remaining ultra vires and takings claims.  The trial court granted summary judgment to the Department on both claims.  The plaintiff then filed a motion for reconsideration, which the trial court denied.  This appeal followed.

## II. Analysis

On appeal, the plaintiff argues that we should reverse and remand the trial court's decisions because the Amended Regulations: (1) substantially impair its contractual rights in violation of the contract clauses of the State and Federal Constitutions; (2) deprive insurers of reasonable rates of return in violation of the takings clauses of the State and Federal Constitutions; and (3) exceed the Commissioner's mandate under RSA 415-D:12 to issue reasonable regulations to promote premium adequacy and to protect policyholders in the event of substantial rate increases.  Because we decide constitutional questions only when necessary, State v. Brouillette, 166 N.H. 487, 489 (2014), we first address the plaintiff's ultra vires argument.

When reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in

3

its capacity as the nonmoving party. Langevin v. Travco Ins. Co., 170 N.H. 660, 663 (2018). If our review of the evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

As relevant here, the plaintiff argued to the trial court that the Amended Regulations exceed the Commissioner's statutory mandate because: (1) they subvert, rather than promote, premium adequacy; and (2) they prevent substantial rate increases, rather than protect policyholders in the event of substantial rate increases. The trial court rejected these arguments, noting that, regardless of whether the Amended Regulations "prove harmful to [the plaintiff's] effort to realize a reasonable return," the LTCI Act nevertheless "permits 'reasonable rules' promoting premium adequacy while protecting the policyholder." The trial court further concluded that the Amended Regulations did not exceed the Commissioner's mandate under RSA 415-D:12 because they permit substantial rate increases, but cap rate increases in certain circumstances "in order to protect the policyholder from the consequences of a more sizable one." Accordingly, the trial court ruled in the Department's favor on the plaintiff's ultra vires claim.

On appeal, the plaintiff reprises the arguments that it made to the trial court. As explained below, we agree with the plaintiff that the Amended Regulations exceed the Commissioner's mandate under RSA 415-D:12 because they are not reasonable rules that either promote premium adequacy or protect policyholders in the event of substantial rate increases.

An administrative regulation exceeds an agency's authority when it contradicts the terms of the governing statute. Appeal of Wilson, 161 N.H. 659, 662 (2011). Although the legislature may delegate to administrative agencies the power to make rules necessary for the proper execution of the law, an agency's authority "is designed only to permit the [agency] to fill in the details to effectuate the purpose of the statute." Id. (quotation omitted). "Thus, administrative rules may not add to, detract from, or modify the statute which they are intended to implement." Id. (quotation omitted).

Resolving the plaintiff's ultra vires argument requires that we interpret the language of RSA 415-D:12. We recognize, as the Department argues, that "it is well established in our case law that an interpretation of a statute by the agency charged with its administration is entitled to deference." Appeal of Town of Seabrook, 163 N.H. 635, 644 (2012); see N.H. Resident Ltd. Partners of Lyme Timber Co. v. N.H. Dep't of Revenue Admin., 162 N.H. 98, 101 (2011) (stating that an administrative regulation adopted by an agency pursuant to a statute is "prima facie evidence of the proper interpretation of the . . . statute" (quotation omitted)). However, the deference afforded is not absolute. Appeal of Town of Seabrook, 163 N.H. at 644. We are the final arbiter of the

4

legislature's intent as expressed in the words of the statute considered as a whole.  Id.  We will not defer to an agency's statutory interpretation if it clearly conflicts with the statutory language or if it is plainly incorrect.  Id.

Accordingly, we review the Commissioner's interpretation of RSA 415-D:12 de novo.  See id.  When interpreting statutory language, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Appeal of Town of Lincoln, 172 N.H. 244, 248 (2019).  Our goal is to apply statutes in light of the policy sought to be advanced by the entire statutory scheme.  Appeal of Morrissey, 165 N.H. 87, 92 (2013).  We apply the same principles of construction to both statutes and regulations.  See Bach v. N.H. Dep't of Safety, 169 N.H. 87, 92 (2016).

We now turn to the merits of the plaintiff's argument.  Both parties point to RSA 415-D:12 as the primary source of statutory authority for the Amended Regulations.  As relevant here, this provision requires the Commissioner to "issue reasonable rules to promote premium adequacy and to protect the policyholder in the event of substantial rate increases."  RSA 415-D:12.

We first address the plaintiff's argument that the Amended Regulations subvert, rather than promote, premium adequacy.  Because the LTCI Act does not define the term "promote," we look to the dictionary for guidance.  See Working Stiff Partners v. City of Portsmouth, 172 N.H. 611, 617 (2019).  The New Oxford American Dictionary defines the word "promote" as to "support or actively encourage."  New Oxford American Dictionary 1398 (3d ed. 2010).  Similarly, the Shorter Oxford English Dictionary defines the word "promote" as to "encourage, help forward, or support actively."  2 Shorter Oxford English Dictionary 2366 (6th ed. 2007).  These definitions suggest that RSA 415-D:12 requires the Commissioner to issue reasonable regulations to support or encourage insurers seeking to maintain premium adequacy.

We interpret the phrase "premium adequacy," as used in RSA 415-D:12, to mean that insurers are capable of maintaining premiums at sufficient levels to cover the anticipated costs of claims over the life of the LTCI policy without the need to request future rate increases.  An important aspect of LTCI is that premiums remain level over time, although such consistency is not guaranteed.  U.S. Gov't Accountability Office, GAO-08-712, Long-Term Care Insurance: Oversight of Rate Setting and Claims Settlement Practices, at 9 (2008), https://www.gao.gov/new.items/d08712.pdf.  When calculating premiums for LTCI policies, insurers seek "to ensure that the total premiums paid by all consumers who bought a given policy and the interest earned on invested assets over the lifetime of the policy are sufficient to cover costs."  Id.  If, however, an insurer miscalculates "the revenue needed to cover costs," it may need to increase premium rates.  Id. at 10 (noting that some companies have

5

struggled with "[s]etting LTCI premium rates at an adequate level to cover future costs"). Thus, an insurer's ability to cover costs depends, at least in part, on its ability to increase rates when its actuarial assumptions prove flawed. See id.

The regulations governing rates for LTCI policies reflect this same interest in maintaining level premiums while ensuring that insurers are capable of covering costs and losses. For example, prior to making LTCI available for sale, an insurer must submit actuarial certification stating, in part, that "the initial premium rate schedule is sufficient to cover anticipated costs under moderately adverse experience and . . . reasonably expected to be sustainable over the life of the [policy] form with no future premium increases anticipated." N.H. Admin. R., Ins 3601.09(b)(2). Similarly, an insurer seeking to increase premium rates must provide, among other things, actuarial certification stating that "[i]f the requested premium rate schedule increase is implemented and the underlying assumptions are realized, then no further premium rate schedule increases are anticipated." N.H. Admin. R., Ins 3601.19(b)(2). Accordingly, we conclude that the phrase "promote premium adequacy," as used in RSA 415-D:12, requires the Commissioner to issue reasonable rules to support or encourage insurers in their efforts to maintain premiums at sufficient levels to cover the anticipated costs of claims over the life of the LTCI policy.

We agree with the plaintiff that the rate-increase caps in the Amended Regulations, N.H. Admin. R., Ins 3601.19(f) (2015), fail to promote premium adequacy. Before 2015, when the Amended Regulations took effect, the Commissioner had authority to approve rate-increase requests as necessary for insurers to maintain premium adequacy, provided that the increases satisfied the loss-ratio and actuarial-certification standards set forth in the 2004 regulations. See N.H. Admin. R., Ins 3601.19(b)-(c) (2004). The Amended Regulations, by contrast, contain slightly altered versions of the previous loss-ratio and actuarial-certification standards, see N.H. Admin. R., Ins 3601.19(b)-(c) (2015), but now cap percentage rate increases based upon the attained age of the policyholder. See N.H. Admin. R., Ins 3601.19(f) (2015) (stating that the Commissioner "shall not approve any increase if the resultant increase results in a percentage increase for any policyholder that exceeds an amount as set forth [in Table 3601.1] based on the policyholder's attained age"). These percentage rate-increase caps apply "to all requests for premium rate schedule increases" for all LTCI policies, including policies issued before the Amended Regulations took effect. N.H. Admin. R., Ins. 3601.19(a) (2015). As a result, insurers who issued LTCI policies based upon the previous rate-increase regulations, believing they could increase rates as necessary to maintain premium adequacy, are now more restricted in their ability to achieve premium

adequacy, especially given the unique difficulties insurers face in predicting costs for LTCI policies.[2]

The Amended Regulations make no exception for LTCI policies that require increases in excess of the rate-increase caps in order to avoid premium inadequacy. See N.H. Admin. R., Ins 3601.19(f) (2015). Nor do they afford the Commissioner discretion to approve increases that exceed the caps. See id. Indeed, the phrase "shall not approve," id., indicates that the Commissioner must reject increases that exceed the rate-increase caps, even if the Commissioner determines that greater increases are necessary to support or encourage insurers' efforts to cover anticipated costs over the life of their LTCI policies. See In the Matter of Bazemore & Jack, 153 N.H. 351, 354 (2006) ("It is a general rule of statutory construction that . . . the word 'shall' makes enforcement of a provision mandatory."). Therefore, because the Amended Regulations deprive the Commissioner of the discretion to evaluate, on a case-by-case basis, whether increases exceeding the rate-increase caps are necessary to ensure that insurers can maintain premium adequacy, we conclude that the rate-increase caps set forth in the Amended Regulations, N.H. Admin. R., Ins 3601.19(f) (2015), are not rules that promote premium adequacy.

The Department, on the other hand, counters that the Amended Regulations do not prohibit the Commissioner from approving increases that exceed the rate-increase caps.[3] Specifically, the Department points to the administrative appeals process, which allows insurers to request hearings to challenge decisions made by the Commissioner and appeal any adverse rulings. See RSA 400-A:17, :24 (2018). The Department also relies upon its own authority to issue declaratory rulings on any matter within its jurisdiction. See N.H. Admin. R., Ins 209.01. Although these provisions may allow insurers to challenge the Commissioner's decisions, they do not permit the Commissioner to deviate from the mandatory language of the Amended Regulations when reviewing rate-increase requests. Indeed, it is well

---

[2] According to the plaintiff's complaint, in setting initial premium rates, insurers make various assumptions about, among other things, mortality rates, morbidity rates, lapse rates, and interest rates on invested assets. However, because policyholders tend to purchase LTCI coverage when they are younger and healthier, most LTCI claims occur long after the insurer issued the policies. Consequently, the ability to predict future claim costs for LTCI is more limited than for other types of insurance with shorter terms of coverage. See Long-Term Care Insurance, supra at 10 (noting that "[b]ecause LTCI is a relatively new product, companies lacked and may continue to lack sufficient data to accurately estimate the revenue needed to cover costs").

[3] We recognize that the Department makes this argument in response to the plaintiff's claim that the Amended Regulations are confiscatory in violation of the takings clauses of the State and Federal Constitutions. However, this argument is equally relevant to our conclusion that the Commissioner has no discretion to deviate from the Amended Regulations in order to promote premium adequacy.

established that "an administrative agency must follow its own rules and regulations." Appeal of Nolan, 134 N.H. 723, 728 (1991) (quotation and brackets omitted). We are therefore unpersuaded that these provisions afford the Commissioner discretion to approve premium rate increases exceeding the caps imposed by the Amended Regulations.

The Department also emphasizes the Commissioner's authority to, under certain circumstances, "issue an order to modify or suspend a specific provision or provisions of this rule with respect to a specific [LTCI] policy." N.H. Admin. R., Ins 3601.16. However, the Department's regulations do not allow insurers to increase rates for specific LTCI policies. See N.H. Admin. R., Ins 3601.05(a). Rather, insurers may only increase rates for certain types of LTCI policies, provided that the increases apply "on a class basis." N.H. Admin. R., Ins 3601.05(a)(2). Because Rule 3601.16 expressly limits the Commissioner's discretionary power to "modify or suspend" regulations to "specific" LTCI policies, we do not interpret this provision as authorizing the Commissioner to approve increases for entire classes of policies in excess of the caps set forth in the Amended Regulations. See Appeal of Nolan, 134 N.H. at 728. Moreover, the LTCI Act specifically protects policyholders from policies that are "unjust, unfair, and unfairly discriminatory to the policyholder." RSA 415-D:5, II(h). To allow the Commissioner to increase rates with respect to specific LTCI policies facing possible premium inadequacy would unfairly disadvantage policyholders with potentially larger claims, undermining the protections afforded to policyholders under the LTCI Act. See id. Accordingly, we conclude that the Commissioner lacks discretion to approve increases that exceed the caps in the Amended Regulations, N.H. Admin. R., Ins 3601.19(f) (2015), and, as a result, the Amended Regulations are not reasonable rules that promote premium adequacy.

We next address the plaintiff's argument that the Amended Regulations do not protect policyholders "in the event of substantial rate increases." RSA 415-D:12. As explained above, the Amended Regulations prohibit the Commissioner from approving increases that exceed the rate-increase caps. See N.H. Admin. R., Ins 3601.19(f) (2015). Although, as the Department argues, the Amended Regulations may protect policyholders from excessive premiums that dilute the value of their policies, the conditional language of RSA 415-D:12 limits the Commissioner's authority to enact such protective measures. The phrase "in the event of," RSA 415-D:12, is an expression of condition, meaning that the Commissioner may issue reasonable regulations aimed at protecting policyholders if an insurer substantially increases its rates. See Greenwald v. Keating, 172 N.H. 292, 298 (2019) (concluding, as a matter of contract interpretation, that the phrase "[i]n the event that" created a condition precedent (quotation omitted)); In re Magoon Estate, 109 N.H. 211, 212 (1968) (holding that the phrase "in the event of her death" in the testator's will described "an uncertain event" and demonstrated the testator's intent to devise property to his wife "if she survived him"); see also Webster's Third New

8

International Dictionary 1124 (unabridged ed. 2002) (defining the word "if" as "in the event that").

However, the Amended Regulations do not merely protect policyholders if insurers substantially increase rates. Rather, by barring the Commissioner from approving any increase that exceeds the caps set forth in Table 3601.1, the Amended Regulations inhibit insurers from substantially increasing rates. See N.H. Admin. R., Ins 3601.19(f) (2015). This prophylactic function distinguishes the Amended Regulations from Rule 3601.27, which requires insurers to offer certain benefits to policyholders if they substantially increase their rates. N.H. Admin. R., Ins 3601.27. Unlike the benefits referenced in Rule 3601.27, which apply only after insurers have already substantially increased rates, the Amended Regulations apply before the Commissioner approves any rate-increase requests. See id. Therefore, we conclude that the rate-increase caps set forth in the Amended Regulations, N.H. Admin. R., Ins 3601.19(f) (2015), do not protect policyholders "in the event of" substantial rate increases. RSA 415-D:12.[4]

Accordingly, we conclude that the rate-increase caps set forth in the Amended Regulations, N.H. Admin. R., Ins 3601.19(f), exceed the Commissioner's mandate under RSA 415-D:12 because they are not reasonable rules that either promote premium adequacy or protect policyholders in the event of substantial rate increases. See RSA 415-D:12. Because we conclude that the rate-increase caps are ultra vires, and, therefore, invalid, we need not address the plaintiff's remaining arguments.

### III. Conclusion

For the reasons stated above, we reverse and remand the trial court's decision denying the plaintiff's motion for summary judgment, and entering summary judgment for the Department, on the plaintiff's ultra vires claim. We consider waived any issues that the plaintiff raised in its notice of appeal, but did not brief. See Weare Bible Baptist Church v. Fuller, 172 N.H. 721, 729 (2019).

Reversed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

---

[4] The Department argues that the LTCI Act affords the Commissioner discretion to balance the promotion of premium adequacy and the protection of policyholders in the event of substantial rate increases. See RSA 415-D:12. According to the Department, the Commissioner's discretion to balance these two potentially conflicting goals is entitled to substantial deference. Because we conclude that the Amended Regulations fail to adequately advance either goal, we need not decide whether the LTCI Act affords the Commissioner such discretion.